1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff,

　　　v.

KYLE GIANIS,

　　　　　　　Defendant.

CASE NO. CR04-0334-JCC

ORDER

     This matter comes before the Court on the Government's motion seeking: (1) authorization to permit the taking of two witness depositions; and (2) continuance of the trial date. (Dkt. No. 13.) Defendant opposes the motion on both counts. (Dkt. No. 16.) Having considered the papers filed by the parties, and relevant portions of the record, the Court finds that oral argument is unnecessary and hereby GRANTS the motion, as follows.

**I.     BACKGROUND**

     On March 12, 2004, U.S. border personnel at Blaine, Washington, discovered ephedrine concealed in a car registered to David Youngberg and driven by Adam Tsoukalas (Mr. Youngberg was a passenger in the vehicle). Both Mr. Youngberg and Mr. Tsoukalas were arrested and then questioned independently, and both apparently eventually implicated Defendant Kyle Gianis as the person who

ORDER – 1

1    induced them to transport the ephedrine over the border. Mr. Gianis was indicted on one charge of

2    Conspiracy - Possession of Ephedrine With Intent To Distribute (Dkt. No. 1), and a warrant was issued

3    for his arrest on July 22, 2004. (Dkt. No. 3.) He was arrested in New York on December 29, 2007.

4         In the interim, Mr. Youngberg and Mr. Tsoukalas were charged in this Court and, ultimately, both

5    pled guilty to federal offenses. Mr. Youngberg pled guilty to Misprison of a Felony and was sentenced on

6    September 24, 2004 to twenty-one months incarceration, with one year of supervised release to follow.

7    *See U.S. v. David Youngberg*, No. 04-0281-JCC, Dkt. No. 34 (W.D. Wash. Sept. 24, 2004). He has

8    since been released and returned to Canada. The Government reports that, since Mr. Gianis' arrest in

9    December 2007, Assistant U.S. Attorney Vince Lombardi has been in communication with Mr.

10   Youngberg's counsel, Nancy Tenney, and "Ms. Tenney has communicated to the government that Mr.

11   Youngberg may be willing to voluntarily come to Court to testify" in Mr. Gianis' trial. (U.S.' Mot. 3

12   (Dkt. No. 13).)

13        Mr. Tsoukalas pled guilty to Attempted Distribution of Ephedrine and was sentenced on

14   December 10, 2004 to sixty months confinement, plus three years supervised release. *See U.S. v. Adam*

15   *Tsoukalas*, No. 04-0273-JCC, Dkt. No. 30 at 2–3 (W.D. Wash. Dec. 10, 2004). He was transferred to

16   Canada in September 2007, presumably as the result of a treaty transfer. It is the Government's

17   understanding that he was recently released from custody. The Government reports that, "to date," it

18   "has not been able to determine Mr. Tsoukalas' intentions. . . . The government has been in contact with

19   Mr. Tsoukalas' mother, who was quite hostile. If her attitude reflects that of her son, it is unlikely he will

20   testify voluntarily." (U.S.' Mot. 4 (Dkt. No. 13).) Mr. Tsoukalas apparently remains subject to probation

21   in Canada and the Government has been in contact with his probation officer there, as well. (*Id.*)

22        Trial in this matter is scheduled to begin on Monday, March 24, 2008. Through the instant

23   motion, the Government requests the Court: (1) grant permission to take depositions of Mr. Youngberg

24   and Mr. Tsoukalas in Canada no later than May 23, 2008; and (2) continue the trial to a date in mid-June

25   or July, 2008, to permit the transcription of the depositions and adequate trial preparation. If the Court

26   ORDER – 2

permits the depositions, the Government intends to "set up an elaborate system to allow [the Defendant] to remain in the United States, to witness the depositions in Canada by live video-feed, and to participate with his attorneys . . . by private telephone during each of the depositions." (U.S.' Mot. 4 (Dkt No. 13).) In the event "it becomes technologically impossible to set up a live audio-feed . . . the government will use live telephone contact enabling the defendant to take an active role in the deposition proceedings." (*Id*. at 4–5.) Mr. Gianis opposes both of the Government's requests.

## II.   DEPOSITIONS UNDER RULE 15(a)

Under the Federal Rules of Criminal Procedure, "a party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." FED. R. CRIM. P. 15(a)(1). "The district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the 'exceptional circumstances' requirement has been satisfied." *U.S. v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998).

Mr. Gianis' argument that, because the Government cannot show that Mr. Youngberg is, in fact, "unavailable," the "exceptional circumstances" requirement is not met, is without merit. Not only do none of the cases cited by Mr. Gianis *require* a showing of unavailability to demonstrate exceptional circumstances, the Ninth Circuit has explicitly held to the contrary:

> Rule 15(a) does not require any conclusive showing of 'unavailability' or 'material testimony' before a deposition can be taken in a criminal case. Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial.

*Omene*, 143 F.3d at 1170.

Here, exceptional circumstances include the fact that Mr. Youngberg is beyond the subpoena power of the United States. *See, e.g.*, *U.S. v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998). Ms. Tenney's statement that her client may be willing to come to the United States voluntarily to testify is by no means a definitive commitment to do so, and if Mr. Youngberg were to choose not to, and the Government *then*

ORDER – 3

moved to take a deposition, further delays in bringing Mr. Gianis to trial would likely result. Moreover, Mr. Youngberg's testimony is clearly relevant, and it appears likely that Mr. Youngberg would be willing to participate in such a deposition. Lastly, Mr. Youngberg received a significantly reduced sentence from this Court, at least in part because of his cooperation. That Mr. Youngberg so benefitted, but is now beyond the coercive arm of the law, is further evidence of the exceptional circumstances of this case, and that the interests of justice would be served by permitting the deposition.

As to Mr. Tsoukalas, Mr. Gianis argues that the Court should deny the Government's request for permission to conduct a Rule 15 deposition, because: (1) Mr. Tsoukalas was incarcerated at the time Mr. Gianis was arrested and the Government should have moved to perpetuate Mr. Tsoukalas' testimony then, instead of waiting until now, when Mr. Gianis' right to speedy trial is implicated; and (2) the Government does not know Mr. Tsoukalas' whereabouts or whether he is even willing to attend a deposition. With regards to the first contention—that the Government acted unreasonably by not moving to perpetuate Mr. Tsoukalas' testimony in December, when he was apparently still in custody in Canada —none of the cases Mr. Gianis cites are on point. Most of the cases Mr. Gianis cites have to do with admissibility of a deposition or former testimony *at trial*. The closest cited case factually, *U.S. v. Mann*, 590 F.2d 361 (1st Cir. 1978), is easily distinguishable. There, the First Circuit held that the district court had improperly granted the government's motion to take the deposition of an Australian witness where "[i]t was clear that the prime reason for the deposition was the impermissible one of clearing the way for this critical witness to leave the court's jurisdiction." *Id.* at 366. Crucially, in *Mann*, the material witness was being held in custody and was only released, and then permitted to leave the United States over the defendant's objections, *after* the deposition was taken. Thus, but for the court's granting the motion to take the deposition, the witness would not have become unavailable. Here, Mr. Tsoukalas has already been released—and his release appears to have been effected by the Canadians, not the U.S. government. Moreover, there can be no argument that the taking of the requested depositions would make Mr. Tsoukalas any more unavailable than he is now. In fact, as the *Mann* court was careful to explain:

ORDER – 4

we do not mean to suggest that courts should be fearful to exercise their proper fully informed discretion to allow a deposition. When the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence. . . . [Rule 15] accords no presumption of admissibility simply because the deposition was taken. The party requesting the deposition cannot escape its burden of taking all reasonable steps to bring to trial a witness whose testimony the party chooses to present. And the major harm to the other party's interests does not occur unless the deposition is admitted.

*Id.* at 366–67. None of the cases Mr. Gianis cites stand for his urged position—that the Government's failure to immediately have Mr. Tsoukalas deposed in December[1] should serve to, in essence, estop an exceptional circumstances argument now, three months later. Moreover, in those three months, the Government reportedly has been attempting to procure Mr. Tsoukalas' voluntary attendance at trial. Mr. Gianis' contention that the Government should have immediately moved to conduct a deposition of Mr. Tsoukalas in December, or, as soon as he was released, determined that he would be unwilling to attend trial and begin the process to compel his presence at a deposition under the Treaty with Canada on Mutual Legal Assistance in Criminal Matters (MLAT), is unrealistic and not compelled by any precedent cited.

Mr. Gianis further contends that the Government does not know Mr. Tsoukalas' whereabouts, or whether he is even willing to attend a deposition, and as such, the Government's request should be denied. Again, the question is whether exceptional circumstances and the interests of justice justify granting the request. The same interests discussed above in relation to Mr. Youngberg are implicated here. In addition, Mr. Tsoukalas is apparently still reporting to a probation officer in Canada, with whom the Government has been in contact. Mr. Gianis is surely correct in stating that the Government is not assured of success if it makes a request to compel Mr. Tsoukalas' presence at a deposition under MLAT. However, that success is not a foregone conclusion does not overwhelm the exceptional circumstances that justify permitting the deposition to go forward, if possible, by the deadline proposed by the

---

[1] A move which Mr. Gianis might have understandably objected to, as his counsel would have had little time—if any—to prepare for such a deposition.

ORDER – 5

Government.

Of course, even if the depositions are successfully completed, if the Government then seeks to admit them at trial in lieu of live testimony, it still must meet all potential evidentiary challenges to that testimony. Those arguments will be addressed at that juncture, in their proper context.

## III.    CONTINUANCE UNDER 18 U.S.C. §§ 3161(h)(8)(A)

The ends of justice served by continuing the trial outweigh the best interest of the public and the Defendant in a speedy trial, such that the period of delay between the date of the Government's motion and the new trial date is excluded in the computation of time under the Speedy Trial Act. 18 U.S.C. §§ 3161(h)(8)(A). Mr. Gianis' indictment was based primarily on the testimony of Mr. Youngberg and Mr. Tsoukalas. Both were sentenced well short of the otherwise applicable, and then mandatory, Guidelines, based on their cooperation. The prosecution cannot proceed without their testimony, which is unavailable by the current trial date. Mr. Lombardi reports that, since Mr. Gianis' arrest, the Government has been working to obtain the testimony at issue. (See U.S.' Mot. 3–4 (Dkt. No. 13).) Under these circumstances, the ends of justice outweigh the Defendant's and the public's interest in a speedy trial.

## IV.    CONCLUSION

For the foregoing reasons, the Government's motion (Dkt. No. 13) is GRANTED, as follows:

1. The Government is authorized to take video depositions in Canada of David Youngberg and Adam Tsoukalas in this matter any time prior to May 23, 2008;

2. The Government will provide to both the Court and defense counsel reasonable prior notice of the time and place of the depositions;

3. The Government shall arrange with the U.S. Marshals for the production and presence of Defendant at the Federal Courthouse so that he may participate in the deposition via video-conference;

4. Counsel for the Government and defense shall be permitted to conduct direct and cross-examination. Defense counsel may also bring support staff. The Government may also have investigative agents present at the deposition;

5. The deposition shall be taken and filed in the manner provided in Rule 15 of the Federal Rules of Criminal Procedure, provided that the scope and manner of examination and cross-examination shall be such as would be allowed in the trial itself. The Government

ORDER – 6

shall make available to defense counsel for examination and use at the taking of the deposition any statement of the witness being deposed which is in the possession of the Government and to which the Defendant would be entitled at trial;

6.    The Government's motion to continue is hereby GRANTED. Trial is continued to June 2, 2008, at 9:00 a.m. Pretrial motions are due by May 8, 2008, and witness and exhibit lists, proposed jury instructions and proposed voir dire are due on May 29, 2008;

7.    IT IS FURTHER ORDERED that pursuant to Title 18, United States Code, Section 3161(h)(8)(A), the period of time from the current trial date to the new trial date is excluded in the computation of time under the Speedy Trial Act as the ends of justice served by taking such action outweigh the best interest of the public and the Defendant in a speedy trial.

SO ORDERED this 18th day of March, 2008.


John C. Coughenour
United States District Judge

ORDER – 7