The Honorable Judge John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | Cause No.  No. CR04-334JCC |
| v. ) | |
| KYLE GIANIS, ) | **Defendant's Memorandum in Support of Cross Examination of Witness Youngberg** |
| Defendant. ) | |

Comes now the defendant, Kyle Gianis, through his attorney, Peter A. Camiel, and submits this memorandum in support of his being allowed to cross examine witness Youngberg regarding his mental condition presently, and at the time of the offense, and his use of prescribed psychiatric medications presently and at the time of the offense.

**Background**

Witness David Youngberg is one of two key witnesses for the government in its case against defendant Kyle Gianis.  Youngberg entered a plea of guilty to a reduced charge of misprision of felony as a part of a plea agreement which required his cooperation against Kyle Gianis.  Youngberg received a sentence of 21 months which he has served.  He is presently released on supervision in British Columbia, Canada.

**Defendant's Memorandum in Support
of Cross Examination of Witness Youngberg**  -1-

*Mair & Camiel, P.S.*
710 Cherry Street
Seattle, Washington  98104
(206) 624-1551 Fax:  623-5951

This Court, by order dated March 18, 2008, granted the government's motion to take Youngberg's deposition pursuant to Federal Rule of Criminal Procedure 15. This Court has not yet ruled whether or not Youngberg's deposition may be used at trial in lieu of his live testimony.

**Mr. Youngberg's Mental Health History**

In support of a motion for downward departure at the time of Youngberg's sentencing, his attorneys argued that he suffered from diminished capacity at the time of the offense. To support this argument, Youngberg presented a number of mental health expert reports including a report from Dr. Eaves, a psychiatrist, who concluded that Mr. Youngberg suffered from severe mental illness which "substantially compromised his cognitive (intellectual) ability and judgment" and thus "contributed substantially to his being involved in criminal behavior." Dr. Eaves' report indicated that Mr. Youngberg had a documented history of neurological disorder, depression, psychosis, and possible schizophrenia.

Mr. Youngberg's mother told the probation officer as is reflected in Mr. Youngberg's presentence report that Mr. Youngberg is "extremely paranoid" and "that he sometimes hears voices and hallucinates."

The offense in this case took place in March of 2004. In March of 2004, Mr. Youngberg was being treated by Dr. Maskall, a psychiatrist. Dr. Maskall reported that he began seeing Mr. Youngberg in May of 2000 and since that time, Mr. Youngberg's psychiatric presentation included chronic depression, intermittent suicidality, agitation and brief psychosis. Mr. Maskall further indicated his differential diagnosis included major depression with psychosis and schizophrenia. Dr. Maskall prescribed and placed Mr. Youngberg on antidepressant medication in the fall of 1999, including Effexor (an antidepressant) and Risperidone (an anti-psychotic). In a note dated February 24, 2004, about two weeks before the charged offense, Dr. Maskall related that Mr. Youngberg had become more depressed and withdrawn having a lack of motivation. Dr. Maskall's file also revealed there were several references to his having ongoing mild paranoid ideation and suspiciousness.

In Dr. Maskall's letter to Mr. Youngberg's attorney dated March 25, 2004, he indicated that with the passage of time, he has been inclined to lean toward schizophrenia as the primary diagnosis. He

indicates that Mr. Youngberg displays significant deficits and verbal linguistic skills, executive skills, abstract reasoning ability and impulse control.  Due to Dr. Maskall's increased concern about Mr. Youngberg's status, Dr. Maskall wrote that he recommended an increase in dosage of medication, particulary the Risperidone.  Risperidone is primarily used to treat schizophrenia and is particularly prescribed to treat symptoms such as hallucinations, delusions and disorganized thinking.

**Argument**

"The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross examination." Davis v. Alaska, 415 U.S. 308, 315-316 (1974).  "Cross examination is the principle means by which the believability of a witness and the truth of his testimony are tested." *Id*. at 315.  In Davis v. Alaska, the Supreme Court repeated the long established general rule that "the cross examiner is not only permitted to delve into the witness's story to test the witness's perception and memory, but the cross examiner has traditionally been allowed to impeach, i.e., discredit, the witness." Davis, 415 U.S. at 316.  Davis requires that a defendant be allowed to test a witness's perceptions and memory via direct means, such as flaws in the witness's story or impeachment evidence, and to attack directly the witness's perceptions and memories of the very events at issue, arguing that his ongoing psychiatric condition calls into question his account of the events.

A number of courts have concluded that a defendant is permitted to delve into a witness's psychiatric condition if that condition was present at the time of the event to which the witness is testifying.  For example, in Hargrave v. McKee, No. 05-1536 (6th Cir. Sept. 27, 2007), an unpublished decision, the Sixth Circuit Court of Appeals granted a state habeas petition based upon an unreasonable limitation on cross examination violating the defendant's 6th amendment right to confrontation where the trial court limited cross examination of the state's key witness regarding her psychiatric condition.  In Hargrave v. McKee, the court stated:

> "We would have no difficulty concluding that the confrontation clause guaranteed Hargrave the right to cross examine Warner, the sole eyewitness against him, regarding Warner's possible delusions and other mental limitations affecting her ability accurately to perceive and recall the events at issue.  Unlike a general attack on credibility, Hargrave's proposed cross examination did not seek merely to demonstrate that Warner's

**Defendant's Memorandum in Support of Cross Examination of Witness Youngberg**  -3-

*Mair & Camiel, P.S.*
710 Cherry Street
Seattle, Washington 98104
(206) 624-1551 Fax: 623-5951

past behavior indicated she might be a person who was more willing to lie under oath than the average person. Rather, Hargrave's proposed cross examination, if successful, raised a strong possibility that Warner's psychiatric condition rendered her testimony unreliable regarding the very events at issue and, accordingly, was more similar to the possibility of unreliability raised by questions of motive or bias than to that raised by questions of general character for truthfulness."

In <u>United States v. Lindstrom</u>, 698 F.2d 1154 (11th Cir. 1983), conviction was reversed once again for an improper restriction on the defendant's right to cross examine a witness regarding his psychiatric condition. In <u>Lindstrom</u>, the court stated:

> "Certain forms of mental disorder have high probative value on the issue of credibility. Although the debate over the proper legal role of mental health professionals continues to rage, even those who would limit the availability of psychiatric evidence acknowledge that many types of 'emotional or mental defect may materially affect the accuracy of testimony; a conservative list of such defects would include the psychosis, most of all neurosis, defects in the structure of the nervous system, mental deficiency, alcoholism, drug addiction, and psychopathic personality.' . . . Mental illness may tend to produce bias in a witness's testimony. A psychotic's veracity may be impaired by lack of capacity to observe, correlate or recollect actual events. A paranoid person may interpret a reality skewed by suspicions, antipathies or fantasies. A schizophrenic may have difficulty distinguishing fact from fantasy and may have his memory distorted by delusions, hallucinations and paranoid thinking. A paranoid schizophrenic, though he may appear normal in his judgment on matters outside his delusional system may remain intact, may harbor delusions of grandeur or persecution that grossly distort his reactions to events."

Similarly, in <u>United States v. Phelps</u>, 733 F.2d 1464 (1984), the court affirmed a conviction where the defendant complained that the trial court improperly limited cross examination about a witness's psychiatric treatment some 14 years before the critical events testified about. The court noted, in affirming the conviction, that the trial court:

> "allowed cross examination of [the witness] concerning his 'psychiatric condition or medical condition' from as long as 5 years before the time of the critical events about which he testified on direct and up to the day of his testimony. The court limited the scope of cross examination to exclude only events deemed so remote in time as to be irrelevant to [the witness's] credibility or ability to remember. [The witness] was available for extensive cross examination by questions on his psychiatric condition relevant to his ability to observe and remember during all the years mentioned in his testimony. . . This was more than adequate to place before the jury [the witness's] mental conditions at all times (1981 to 1982) pertinent to this case and to the critical events about which he testified."

See also, <u>United States v. Pommerening</u>, 500 F.2d at 92, 100 (10th Cir.), cert. den. 419 U.S. 1088 (1974).

**Defendant's Memorandum in Support**
**of Cross Examination of Witness Youngberg**  -4-

*Mair & Camiel, P.S.*
710 Cherry Street
Seattle, Washington 98104
(206) 624-1551 Fax: 623-5951

In Greene v. Wainwright, 634 F.2d 272 (5th Cir. 1981), the court reiterated that "where the witness the accused seeks to cross examine is the 'star' government witness, providing an essential link in the prosecution's case, the importance of full cross examination to disclose possible bias is necessarily increased." The court went on to state that the readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in the determination of the truth. It is just as reasonable that a jury be informed of a witness's mental incapacity at the time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing.

**Conclusion**

The witness herein, Youngberg, argued at his own sentencing that he suffered from diminished capacity at the time of the offense. There is substantial evidence that he suffered from a mental impairment and was on significant psychiatric medications at the time of the offense. The anti-psychotic medication that the witness was receiving commenced three and a half years before the offense and was continuing up through the time that he was involved in this offense. Questions during cross examination concerning medication that Mr. Youngberg was on at the time of the offense and at the time of trial or his deposition as well as his psychiatric condition at the time of the offense and at the time of trial or deposition should be permitted so that the jury has a full understanding of matters which may have affected Mr. Youngberg's ability to perceive and understand events as well as matters going to his motives or bias. These are fundamental aspects of cross examination and confrontation which the defendant should be permitted to explore.

1  DATED this 22nd day of May, 2008.

2                                                                    Respectfully submitted,

3

4                                                                    /s/   Peter A. Camiel
                                                                     Peter A. Camiel, WSBA #12596
                                                                     Attorney for Kyle Gianis

**Defendant's Memorandum in Support
of Cross Examination of Witness Youngberg**   -6-

*Mair & Camiel, P.S.*
710 Cherry Street
Seattle, Washington 98104
(206) 624-1551 Fax: 623-5951

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s) and plaintiff.

/s/  Peter A. Camiel, WSBA #12596

**Defendant's Memorandum in Support of Cross Examination of Witness Youngberg**  -7-

*Mair & Camiel, P.S.*
710 Cherry Street
Seattle, Washington 98104
(206) 624-1551 Fax: 623-5951