The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.   CR04-334RSM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | UNITED STATES' TRIAL BRIEF |
| | ) | |
| KYLE GIANIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I. **INTRODUCTION**

The United States of America, by and through Jeffrey C. Sullivan, United States Attorney, and Vincent T. Lombardi, Assistant United States Attorney, respectfully submits this trial brief.

Defendant Kyle Gianis is currently charged with one count of Conspiracy to Possess Ephedrine with the Intent to Distribute, in violation of 21 U.S.C. 841 and 846.[1] The original indictment was returned on or about July 21, 2004.  Defendant, a Canadian citizen, was arrested in New York on or about December 29, 2007 and is detained at the FDC.

Trial is set for June 2, 2008.  The government anticipates calling approximately 15

---

[1]  The government may supersede the Indictment to add additional charges after the filing of this brief.

1    witnesses, most of whom are quite short, and introducing approximately 15 exhibits,

2    primarily photographs.  Assuming a reasonable amount of cross-examination, the

3    government anticipates that it's case in chief will last approximately three days or less,

4    including jury selection and opening statements.  It is the government's understanding

5    that the defense does not anticipate calling any witnesses.

6                        **II. <u>FACTUAL BACKGROUND</u>**

7         The evidence will show as follows:

8    **A.    The Prosecution of Tsoukalas and Youngberg**.

9         This case arises out of a prior related prosecution.  On March 12, 2004, Adam

10   Tsoukalas and David Youngberg attempted to cross the border from Canada at the Pacific

11   Highway Port of Entry in Blaine, Washington, in a vehicle registered to Youngberg, but

12   driven by Tsoukalas.  During primary inspection by United States border personnel, a

13   blue barrel was found concealed under a black plastic bag in the trunk.  The inspector

14   asked Tsoukalas what was in the barrel, and Tsoukalas answered "just some stuff."

15        The two men and their vehicle were referred to secondary inspection.  During the

16   more thorough search of the car, a second blue barrel was also found in the trunk.  Both

17   barrels were found to contain a white crystalline powder.  An analysis by the

18   United States Drug Enforcement Administration laboratory showed that the powder was

19   ephedrine.  As the Court knows, ephedrine is one of the precursor chemicals used to

20   manufacture methamphetamine, and is a controlled substance in the United States.

21        Both men were placed under arrest, and were separated and questioned.  Both men

22   independently identified the source of the ephedrine as Gianis.[2]  According to both men,

23   Tsoukalas was originally approached by Gianis in Canada, who asked if Tsoukalas was

24   interested in moving marijuana over the border into the United States.  Gianis and

25   Tsoukalas had been in High School together in Canada, and worked out at the same gym.

26   Tsoukalas had purchased steroids from Gianis in the past, and the two had also done a

27

28        [2] Both men also later proffered to the government after counsel were appointed, and
     gave the same account of their involvement and Gianis' role, albeit with more detail.

1    prior marijuana deal together.

2          Tsoukalas and Youngberg were friends.  Youngberg was present at the original

3    meeting between Tsoukalas and Gianis, but did not really participate.  Instead, Tsoukalas

4    served as the primary contact with Gianis, and approached Youngberg to assist him -

5    Tsoukalas' car had been stolen, and he needed Youngberg and Youngberg's vehicle to

6    make the transaction happen.  Tsoukalas planned to split the money he would receive for

7    crossing the border, about $10,000, with Youngberg.

8          On the day of their arrest, Gianis called Tsoukalas and asked if he would be

9    willing to move a quantity of ephedrine over the border.  Tsoukalas said yes, and both

10   Tsoukalas and Youngberg ended up meeting with Gianis to pick up the barrels in the

11   Surrey area.  Gianis loaded the barrels into the trunk of Youngberg's vehicle, and the two

12   drove down to the U.S./Canadian border, where they were arrested.

13         Both Tsoukalas and Youngberg were charged in this Court, and ultimately agreed

14   to cooperate and plead guilty to federal offenses.  Youngberg pleaded guilty to a

15   misprison of a felony, in violation of Title 18, United States Code, Section 4.  He was

16   sentenced to twenty-one months incarceration on or about September 24, 2004, and has

17   since been released and returned to Canada.

18         Tsoukalas was ultimately sentenced to sixty months incarceration.  He was

19   transferred to Canada on or about September 25, 2007 pursuant to the Convention on the

20   Transfer of Sentenced Persons.  Tsoukalas was recently released from custody, but

21   remains on Parole in Canada.

22   **B.     Indictment and Later Arrest of Gianis.**

23         Based on the information provided by defendants Tsoukalas and Youngberg, the

24   United States sought and successfully obtained the indictment of Gianis presently before

25   the Court.  Gianis was arrested in New York, NY in late December of last year, after he

26   was ejected from Mexico by the Mexican government.  He was ultimately transferred to

27   this district for trial, which is currently scheduled for June 2, 2008.  Mr. Gianis is detained

28   pending trial, in part due to a history of criminal activity and violence in Canada.

U.S. TRIAL BRIEF - 3
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 **C.      Procedural History.**

2      After Gianis' transfer to this District, the government contacted both Youngberg

3 (through his U.S. counsel, Nancy Tenney) and Tsoukalas (through his mother).

4 Youngberg indicated through counsel that he might be prepared to testify, but was

5 somewhat reluctant and equivocal.  Tsoukalas's mother told the agent and AUSA that her

6 son would not cooperate.

7      The government then moved the Court to authorize the government to take

8 perpetuation depositions of each man pursuant to Rule 15 (Dkt. No. 13).  The Honorable

9 John C. Coughenour granted the motion over the defendant's objection in an order dated

10 March 18, 2008 (Dkt. No. 18).  The government then applied for, and received, Canadian

11 government assistance in scheduling and conducting the depositions pursuant to the

12 mutual legal assistance treaty between the two countries.

13      Both Tsoukalas and Youngberg were deposed in Vancouver, Canada on May 14

14 and May 15, 2008.  The depositions were conducted in the Supreme Court for British

15 Columbia (which is the equivalent of our Federal District Court), before The Honorable

16 Madam Justice L. B. Gerow, who administered oaths to each witness.  Defense counsel

17 Peter Camiel participated in person, and had the opportunity to cross-examine each

18 witness.  Defendant was able to observe the proceedings live via video-conference link

19 from the FDC; also present with him was Peter Mair, Mr. Camiel's partner.  Mr. Camiel

20 had the opportunity to confer with his client via telephone at breaks during his cross-

21 examination.  Both depositions were transcribed by an American court reporter and

22 videotaped.

23 **III. <u>WITNESSES</u>**

24 **A.      General Information About Witnesses.**

25      The government will file a witness list identifying the persons who may testify at

26 trial.  The government expects to call approximately fifteen witnesses in its case-in-chief.

27 Statements, information and/or reports regarding the listed witnesses have been and

28 continue to be provided to defense counsel through the discovery process.

U.S. TRIAL BRIEF - 4
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**B.   Expert Witnesses.**

The government has notified the defense that the government may call three expert witnesses.  The government may call a Drug Enforcement Administration (DEA) Chemist, to testify that the substance seized was in fact ephedrine, and a DEA Fingerprint Examiner, to explain why Gianis' fingerprints were not found on packaging containing the ephedrine.  The government has proposed a stipulation regarding these witnesses testimony to the defense.  If the stipulation is agreeable to the defendant, the government respectfully asks the Court to confirm defendant's agreement on the record prior to trial.

The government may also call DEA Special Agent Errin Jewell, to testify regarding the use of ephedrine to manufacture methamphetamine, the street value of the ephedrine, and other opinion testimony about drug smuggling and trafficking organizations.  Some of Agent Jewell's testimony is the subject of a pending motion in limine (Dkt. No. 38).  Those arguments will be addressed in more detail in the response to that motion.

If specialized knowledge will assist the trier of fact in understanding the evidence or determining an issue, a qualified expert witness may provide opinion testimony on the issue in question.  FED. R. EVID. 702.  Rule 702 recognizes that an intelligent evaluation of the facts is often difficult or impossible without the application of specialized knowledge.  *Id.* (advisory comm. n.).  An expert may testify based on information not obtained from personal observation if it is based on information of the type reasonably relied on by experts in forming expert opinions.  *See United States v. Golden,* 532 F.2d 1244 (9th Cir. 1976) (proper to admit DEA agent's testimony about market value of heroin where that testimony was based in part on information obtained from other undercover agents; such information is of type reasonably relied on by experts determining prevailing prices in clandestine markets).

/ / /

/ / /

/ / /

1

## IV. EXHIBITS

2    The government's exhibits will primarily consist of photographs, and a threshold

3  amount of the ephedrine.[3]  A draft of the government exhibit list was provided to the

4  defense prior to the depositions referred to above, and the government will provide the

5  Court and defense counsel with a copy of all documentary and photographic exhibits.

6  Additionally, the government reserves the right to supplement its exhibit list in order to

7  adequately respond to or rebut any evidence offered by the defense.

8

## V. LEGAL ISSUES

9  **A.    Conspiracy.**

10    1.    Elements of Conspiracy Charge.

11    Count 1 of the Indictment charges Defendant with Conspiracy to Possess

12  Ephedrine with the Intent to Distribute, in violation of 21 U.S.C. 841 and 846.  Section

13  846 generally provides that any person who attempts or conspires to commit any offense

14  under Title 21 shall be subject to the same penalties as those prescribed for the offense.

15    To obtain a conviction for conspiracy, the United States must prove: (1) that there

16  was an agreement between two or more persons to distribute heroin; and (2) that the

17  Defendant became a member of the conspiracy knowing at least one of its objects and

18  intending to help accomplish it.  *See* Instruction 8.16, *Ninth Circuit Model Jury*

19  *Instructions* (2004 Edition); *United States v. Garza*, 980 F.2d 546, 552 (9th Cir. 1992);

20  *United States v. Atkinson*, 966 F.2d 1270, 1275 (9th Cir. 1992).  The Supreme Court has

21  held that the drug conspiracy statute, 21 U.S.C. § 846, does not require proof of an overt

22  act.  *United States v. Shabani*, 513 U.S. 10, 15 (1994).  *See also United States v.*

23  *Montgomery*, 150 F.3d 983, 997 (9th Cir.1998). Thus, an overt act need not be alleged in

24  the Indictment nor proven at trial - although there is ample evidence of multiple overt acts

25  in this case.

26

27    [3] Per policy, the bulk of the ephedrine was destroyed by ICE at the conclusion of the
   Tsoukalas and Youngberg cases, due to the cost and hazards associated with long-term
28  storage of so large a quantity of a controlled substance.  The threshold quantity - believed
   to still be quite large - will be available at trial.

1    The Government bears the burden of proving beyond a reasonable doubt that an

2  agreement has been made to accomplish an illegal object.  *Id*.  However, a conviction for

3  conspiracy does not require direct evidence of that agreement.  The agreement to engage

4  in criminal activity between the conspirators need not be explicit, but may be inferred

5  from circumstantial evidence.  *United States v. Thomas*, 586 F.2d 123, 127-32 (9th Cir.

6  1978).  Indeed, the agreement "may consist of nothing more than a tacit understanding."

7  *United States v. Mohr*, 728 F.2d 1132, 1135 (8th Cir. 1984).  It is sufficient to show that

8  the conspirators came to a mutual understanding to accomplish an unlawful purpose.

9  *American Tobacco Co. v. United States*, 328 U.S. 781, 809-810 (1946); *United States v.*

10  *Kiriki*, 756 F.2d 1449, 1453 (9th Cir. 1985).  One of the means of proving a conspiracy is

11  evidence that the defendants acted together to achieve a common goal.  Coordination

12  between defendants is strong circumstantial evidence that parties have an agreement.

13  *United States v. Fulbright*, 105 F.3d 443, 448 (9th Cir. 1997).  "Once a conspiracy has

14  been established, evidence of only a slight connection with it is sufficient to establish a

15  defendant's participation in it."  *United States v. Castaneda*, 16 F.3d 1504, 1510 (9th

16  Cir.1994).

17    The government is not required to prove that each conspirator knew the identity,

18  location, number and function of all of his coconspirators, or that all worked together

19  consciously to achieve a desired end, or even that each conspirator was aware of all of the

20  details of the enterprise.  *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir. 1977),

21  *cert. denied*, 434 U.S. 971 (1977); *United States v. Baxter*, 492 F.2d 150, 157-160

22  (9th Cir. 1973), *cert. denied*, 416 U.S. 940 (1974); *Daily v. United States*, 282 F.2d 818,

23  820 (9th Cir. 1960); *Marino v. United States*, 91 F.2d 691, 696 (9th Cir. 1937).

24    2.    Criminal Liability of Coconspirators.

25    One who joins an ongoing conspiracy is bound by all prior acts of

26  coconspirators taken in furtherance of the conspiracy.  *United States v. Traylor*, 656 F.2d

27  1326, 1337 (9th Cir. 1981) (citing *United States v. Knight*, 416 F.2d 1181, 1184 (9th Cir.

28  1969).  A coconspirator is also responsible for all reasonably foreseeable substantive

U.S. TRIAL BRIEF - 7
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   crimes committed in furtherance of the conspiracy, even if he or she did not participate in

2   or have knowledge of their commission.  *Pinkerton v. United States*, 328 U.S. 640 (1946);

3   *United States v. Reed*, 726 F.2d 570, 580 (9th Cir.), *cert. denied*, 469 U.S. 871 (1984);

4   *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir. 1983); *United States v. Shaprio*,

5   669 F.2d 593, 596 n.2 (9th Cir. 1982).  Thus, the act of one conspirator is the act of all.

6   *Phillips v. United States*, 356 F.2d 297, 303 (9th Cir.), *cert. denied*, 384 U.S. 952 (1966).

7        The Government will introduce evidence of individual acts of the defendant and

8   the co-defendants as coconspirators done in furtherance of the conspiracy, which are

9   attributable to all members of the conspiracy.

10       3.    Possession of Listed Chemical.

11       The subject of the conspiracy was the possession with intent to distribute

12   ephedrine, a listed chemical.  Unlike "hard drugs," ephedrine and other listed chemicals

13   covered by 21 U.S.C. 841(c) are not, of course, *per se* illegal.  Rather, they can be

14   possessed and used under certain circumstances.  Accordingly, the government must

15   prove that defendant possessed it "knowing or having reasonable cause to believe" that it

16   would be used to produce another illicit drug - here, methamphetamine.  It is well

17   established that this *mens rea* is constitutionally permissible.  *See United States v. Kaur*,

18   382 F.3d 1155 (9th Cir. 2004) (the standard found at 21 U.S.C. 841(c)(2) "imposes a

19   constitutionally sufficient mens rea requirement."); *United States v. Johal*, 428 F.3d 823

20   (9th Cir. 2005); *United States v. Ching Tang Lo*, 447 F.3d 1212 (9th Cir. 2006);

21   *United States v. Estrada*, 453 F.3d 1208 (9th Cir. 2006).

22   **B.    Evidence of Other Acts or Crimes.**

23       The defendants may attempt to challenge the admissibility of certain evidence set

24   forth in the Summary of Trial Facts above, as Rule 404(b) evidence of "other acts or

25   crimes" committed by the defendants.  *See* FED. R. EVID. 404(b).  Specifically, the

26   defendant may challenge the admissibility of prior drug dealings between Defendant and

27   Tsoukalas.

28       This evidence is not subject to exclusion under FED. R. EVID. 404(b).  According

U.S. TRIAL BRIEF - 8
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  to Rule 404(b), evidence of other acts or crimes are not admissible to show the propensity

2  of the defendant to commit the offenses charged.  However, such evidence may be

3  admissible to prove intent and knowledge if:  (1) the evidence tends to show an element

4  of the charged offenses that is a material issue in the case; (2) the other acts, if used to

5  prove intent, are sufficiently similar to the offense charged; (3) there is clear and

6  convincing evidence that the defendant committed the other acts; (4) the probative value

7  of the evidence is not substantially outweighed by the danger of unfair prejudice; and (5)

8  the other acts are not too remote in time.  FED. R. EVID. 404(b); *United States v. Brown*,

9  880 F.2d 1012, 1014 (9th Cir.1989); *United States v. Spillone*, 879 F.2d 514, 518-20

10  (9th Cir.1989).

11        Thus, for example, evidence of prior sale of illegal drugs is relevant under Rule

12  404(b) to issues of intent and knowledge in a prosecution for possession with intent to

13  distribute narcotics.  *See United States v. Mehrmanesh*, 689 F.2d 822, 832 (9th Cir.1982);

14  *United States v. Hegwood*, 977 F.2d 492, 497 (9th Cir. 1992).  Evidence of subsequent

15  acts also may be admitted under Rule 404(b).  *See United States v. Bibo-Rodriquez*,

16  922 F.2d 1398 (9th Cir. 1991) (evidence of subsequent attempt to drive truck packed with

17  marijuana admissible to establish defendant's knowledge on prior attempt); *Mehrmanesh*,

18  689 F.2d at 832-33 (use of subsequent acts to prove intent).  Where specific intent is an

19  element of the charged offense, the government may introduce evidence relevant to intent

20  in its case-in-chief without the defendant having first put the question of intent in

21  question.  *Id.* at 832 n. 10.

22        Here, the prior drug transactions between Gianis and Tsoukalas is directly relevant

23  to the conspiracy charge.  It establishes the background to the conspiracy, showing that

24  the two had a prior course of dealing, and that Defendant had reason to believe that

25  Tsoukalas was willing and able to bring the ephedrine across the border.

26        This evidence is crucial to address one of the Defendant's theories of the case.

27  During cross-examination of Mr. Tsoukalas, defense counsel attempted to establish that

28  (a) Defendant and Tsoukalas were mere acquaintances, and (b) that it was improbable that

U.S. TRIAL BRIEF - 9
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Defendant would ask a mere acquaintance to take such a large quantity of drugs over the

2  border.  Tsoukalas and Defendant's prior dealings put these facts in context.

3  **C.      Use of Depositions.**

4          The defense has filed a motion to prevent the use of the depositions at trial.

5  Dkt. No. 37.  The government anticipates - and hopes - that both Tsoukalas and

6  Youngberg will appear and testify in person at trial, which would moot this issue.  It is

7  very much the government's preference to have its two most important witnesses testify

8  live, which is always preferable to proceeding via depositions.

9          However, if one or both does not appear, the government does intend to seek to

10 use the depositions in lieu of live testimony.  The government will set forth the legal

11 standard governing the use of depositions in its response to Defendant's pending motion.

12 **D.      Use of Defendant's Prior Statements.**

13         The government reserves the right to use prior statements of the Defendant,

14 including but not limited to the statement given to arresting agents in New York.  This

15 statement is the subject of a pending Motion to Suppress (Dkt. No. 36), and the

16 government will fully outline its view of the law and facts in its response to that motion.

17 **E.      Hearsay Statements Not Offered for Proof of the Matter Asserted.**

18         "Hearsay is a statement, other than one made by the declarant while testifying at

19 the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R.

20 Evid. 801(c).  The admission of hearsay into evidence is generally proscribed by Rule

21 802.  When it is relevant that an out-of-court statement was made, however, and the

22 statement is offered exclusively to prove that it was made, it is not hearsay and is

23 therefore admissible.  *See Williams v. United States*, 458 U.S. 279 (1982).  That is

24 because statements not offered for their truth are not hearsay.  Rule 801(c).

25         In certain instances, the government may offer statements made by out of court

26 declarants not to prove the truth of the matters asserted, but merely to explain the

27 subsequent actions of the law enforcement agents.  Therefore, the statements would not

28 constitute "hearsay" within the definition of Fed. R. Evid. 801.  *See United States v.*

U.S. TRIAL BRIEF - 10
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   *Catano*, 65 F.3d 219 (1st Cir. 1995) (informant's part of conversation with agent was not

2   hearsay, because it was offered for context and not to prove the truth of the informant's

3   statements); *United States v. Lowe*, 767 F.2d 1052 (4th Cir. 1985) (agent's testimony

4   regarding information he received from third party was not hearsay, since it was offered

5   to explain the preparations agents took in anticipation of the accused's arrest);

6   *United States v. Rubin*, 591 F.2d 278 (5th Cir. 1979) (defendant union officer's testimony

7   that former union presidents had told him constitutions were flexible and could be

8   interpreted to fit local needs was not objectionable hearsay, because it was not offered to

9   prove the truth of what past union presidents said, but to show the effect such statements

10  had on defendant's actions); United States v. Stout, 599 F.2d 866 (8th Cir. 1979) (police

11  officer's description of a vehicle, as transmitted to him by third party, was admissible to

12  prove why the officer stopped the car, and was not objectionable hearsay).

13  **F.    *Henthorne* Issues.**

14          Pursuant to a request of the defense and the case of *United States v. Henthorne*,

15  931 F.2d 29 (9th Cir. 1990), the government has examined, or is in the process of

16  examining, the personnel files of all law enforcement agents it plans to call at trial.  To

17  date, the witnesses do not have any negative information that can be used to impeach the

18  witness, with one possible exception.

19          As to the possible exception, one of the law enforcement personnel does have an

20  old (approximately eight years ago) reprimand in his file.  The government respectfully

21  submits that the material does not go to the witness's honesty, competence, or any other

22  material aspect of his character, and therefore does not need to be produced to the

23  defense.

24          However, in an abundance of caution, the government proposes to submit the

25  material documenting the reprimand *ex parte* for the Court's review *in camera* as

26  authorized by *Henthorne*.  If the Court agrees, the government respectfully submits the

27  Court should simply note that it has reviewed the material on the record and determined it

28  does not need to be disclosed to the defense.  If the Court disagrees with the

1  government's analysis, the government will of course make the material available to the

2  defense.

3                              VI. **<u>CONCLUSION</u>**

4        This memorandum has been prepared to acquaint the Court with the legal and

5  factual issues that may arise at trial.  If other issues arise, the government will address

6  those by way of a supplemental brief.

7        DATED this 28th day of May, 2008.

8                                          Respectfully submitted,

9                                          JEFFREY C. SULLIVAN
                                           United States Attorney
10
                                           ___/s Vincent T. Lombardi_____
11                                         VINCENT T. LOMBARDI
                                           WSBA # 21967
12                                         Assistant United States Attorney
                                           United States Attorney's Office
13                                         700 Stewart Street, Ste. 5520
                                           Seattle, Washington 98101
14                                         Facsimile: 206-553-4440
                                           Phone: 206-553-5178
15                                         E-mail: vince.lombardi@usdoj.gov

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. TRIAL BRIEF - 12
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).  I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.


                           s/ Stephanie J. Orona
                          STEPHANIE J. ORONA
                          Legal Assistant
                          United States Attorney's Office
                          700 Stewart Street, Suite 5220
                          Seattle, Washington 98101-1271
                          Phone: 206-553-4228
                          Fax: 206-553-0755
                          E-mail: Stephanie.Orona@usdoj.gov