The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>KYLE GIANIS,<br><br>                Defendant. | NO.   CR04-334RSM<br><br>GOVERNMENT'S RESPONSE TO DEFENSE MOTION IN LIMINE |

## I. INTRODUCTION

The United States of America respectfully submits this response to Defendant's Motion in Limine (Dkt. # 38). The government does not intend to introduce many of the categories of evidence covered by the motion, and therefore does not oppose it as such. As to others, the government offers the following response.

## II. BACKGROUND

The basic background is set forth in the government's trial brief and other prior filings, and will not be repeated in the interests of brevity.

## III. LEGAL ANALYSIS

The government will respond to Defendant's motion in the same order as set forth in the motion.

RESPONSE TO DEFENSE MOTION IN LIMINE - 1
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1. **Defendant's Criminal History or Arrest Record.**

The government does not intend to directly introduce any reference to Mr. Gianis' prior record in its case in chief, and to that extent does not object to the motion in limine. However, it is incorrect to state that the Defendant has "no criminal convictions." The quote referred to in Defendant's motion is taken out of context; it refers to one query from one of a number of Canadian databases.

According to information provided by Pretrial Services, Gianis has a number of prior convictions, including a March 25, 1999 conviction for Assault, in which he received nine months probation (a juvenile conviction); an April 25, 2001 conviction for possessing a controlled substance, for which he received one year probation (apparently also as a juvenile); and a June 15, 2005 conviction for possessing a firearm, for which he received 30 days. In addition, Gianis has an extraordinarily long list of arrests and other contacts with law enforcement, including multiple shooting incidents. Indeed, if one "Googles" the name "Kyle Gianis," the top hits are articles in two Canadian newspapers about a shooting incident at his home, and how his neighbors fear the defendant. One of the articles refers to his prior conviction for possessing a prohibited firearm.

The government does reserve the right to refer to Mr. Gianis' prior firearm conviction in the event he testifies on his own behalf during cross-examination, and/or if he calls a character witness of any type.

The government also reserves the right to refer to Mr. Gianis' criminal history and reputation for violence generally, in response to any defense argument that Youngberg and Tsoukalas somehow conspired to "frame" Mr. Gianis, which appears to be the defense theory. It is hardly credible to suggest that Youngberg and Tsoukalas decided to frame a man who had a well-known propensity for violent acts.

2. **References by Witnesses Tsoukalas and Youngberg to the Defendant being a Drug Dealer.**

The government does not intend to introduce the precise statements referred to by the defense in its motion. However, the government does intend to introduce

RESPONSE TO DEFENSE MOTION IN LIMINE - 2
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

evidence of specific prior drug dealings between Tsoukalas and Gianis in Canada, specifically (a) that Tsoukalas purchased steroids from Gianis in the past, and (b) that Tsoukalas and Youngberg did a marijuana deal together shortly before the incident that lead to this case. These prior dealings provide the background of the charged offense. They also rebut an argument the defense made during the prior depositions in this case, that it was unlikely that Mr. Gianis would have approached a mere acquaintance such as Tsoukalas to move drugs over the border. Their prior drug deals provide the basis for why Gianis would have thought Tsoukalas would be willing and able to undertake to smuggle drugs over the border.

### 3. Circumstances of Defendant's Arrest.

The government does not intend to introduce the circumstances of his arrest as such. However, it will seek to introduce a statement defendant made to arresting agents. That statement is the subject of another pending motion.

### 4. Anonymous Letter.

The government does not intend to introduce the letter.

### 5. Observations of Mr. Gianis' Brother.

The government does not intend to introduce this evidence in its case in chief. It may seek to introduce this evidence during cross-examination of either the defendant or his brother Nicolas, or in rebuttal.

### 6. Motion to Limit DEA Expert Testimony.

Defendant seeks to limit (although not prohibit) expert testimony by Special Agent Errin Jewell, who will testify as an expert in drug trafficking methods. The Court should reject this request.

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto." The decision to admit expert testimony "is committed to the discretion of the [trial] court and will not be disturbed [on appeal] unless manifestly

RESPONSE TO DEFENSE MOTION IN LIMINE - 3
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 erroneous." United States v. Kinsey, 843 F.2d 383, 388 (9th Cir. 1988), reversed on other
2 grounds, United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000).  To the extent that an
3 expert's testimony is based upon information obtained other than through personal
4 observation, it is permissible if it is based upon information of the type reasonably relied
5 upon by experts in forming expert opinions.  See United States v. Golden, 532 F.2d 1244
6 (9th Cir. 1976) (holding it proper to admit DEA agent's testimony about market value of
7 methamphetamine where that testimony was based in part upon information obtained
8 from other undercover agents, because such information is of the type reasonably relied
9 upon by experts determining prevailing prices in clandestine markets).

10       The Government intends to call Special Agent Errin Jewell as an expert witness at
11 trial, and has provided appropriate notice to the defense of the subject matter of his
12 testimony.  Agent Jewell, an experienced DEA agent, will provide opinion and expert
13 testimony regarding the *modus operandi* of drug trafficking organizations, drug quantities
14 typically associated with distribution, and the monetary value of the controlled substances
15 seized during this investigation.  He may also offer expert testimony in the following
16 general areas of narcotics trafficking, among others: common narcotics packaging and
17 storage methods; and methods used to avoid detection of drug trafficking.

18       "Courts have overwhelmingly found police officers' expert testimony admissible
19 where it will aid the jury's understanding of an area, such as drug dealing, not within the
20 experience of the average juror." United States v. Thomas, 74 F.3d 676, 682 (6th Cir.
21 1996).  The Ninth Circuit has explained the basis for such expert testimony as follows:

> We have held that drug-enforcement experts may testify that a defendant's activities were consistent with a common criminal *modus operandi*.  This testimony helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior.  Further we even allow *modus operandi* expert testimony in cases that are not "complex."

United States v. Webb, 115 F.3d 711, 713-14 (9th Cir. 1997)(citing United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984) ("[G]overnment agents or similar persons may testify as to the general practices of criminals to establish the defendants' *modus*

RESPONSE TO DEFENSE MOTION IN LIMINE - 4
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

*operandi*."); <u>United States v. Gill</u>, 58 F.3d 1414, 1422 (9th Cir. 1995) (rejecting contention that *modus operandi* testimony was improper because the activities described were not "complex ones requiring expert explanation").

Thus, the Ninth Circuit consistently has affirmed the admission at trial of expert testimony by experienced law enforcement agents concerning various facets of the drug trade.  <u>See, e.g.</u> <u>United States v. Plunk</u>, 153 F.3d 1001, 1016-17 (9th Cir. 1998) (proper for police detective to testify as expert witness "in the field of narcotics trafficking, including wiretapping investigations, analysis of codes, words, and references by narcotics traffickers"; witness allowed to testify regarding general usage of cryptic terminology by drug dealers, and to interpret encoded conversations involving defendant and his coconspirators); <u>United States v. Figueroa-Lopez</u>, 125 F.3d 1241, 1245-46 (9th Cir. 1997) (testimony by DEA agent regarding *modus operandi* and other particular characteristics of drug traffickers would have been proper if agent was qualified as expert; error was to admit testimony as lay opinion evidence); <u>United States v. Simas</u>, 937 F.2d 459, 464-65 (9th Cir. 1991) (lay opinion testimony admissible that defendant's activities matched "the usual criminal *modus operandi*"); <u>United States v. Espinosa</u>, 827 F.2d 604, 611-12 (9th Cir. 1987) (expert testimony permissible from police officer regarding, (a) defendant's use of apartment as "stash pad" for drug transactions, and (b) the witness' interpretation of defendants' ledger books and his conduct during suspected drug transactions); <u>United States v. Stewart</u>, 770 F.2d 825, 831 (9th Cir. 1985) (collecting cases regarding admission of DEA agent expert testimony regarding counter surveillance techniques, use of lookouts at drug transactions, and drug traffickers' common usage of cars and apartments registered in other persons' names); <u>United States v. Bailey</u>, 607 F.2d 237, 240 (9th Cir. 1979) (proper for DEA agent to testify as expert witness "regarding the meaning and use of code words and commonly used phrases in drug transactions," where witness did not attempt to interpret specific statements made by defendant).

The Ninth Circuit similarly has approved of expert testimony regarding drug quantity and monetary value.  "DEA agents can testify as to the street value of narcotics,

RESPONSE TO DEFENSE MOTION IN LIMINE - 5
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

and counsel can argue reasonable inferences from it." United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994) (holding that "[t]here was no abuse of discretion in admitting the evidence or allowing argument about its significance") (citations omitted).  Thus, the Ninth Circuit consistently has held that testimony from DEA agents concerning the value of narcotics is admissible at trial, especially when defendants are charged with distribution related offenses.  See United States v. Golden, 532 F.2d 1244, 1247-48 (9th Cir. 1976) (The value of the drugs found in the bags was relevant to both appellants' knowledge of the presence of the drugs, and intent to distribute; trial court did not abuse its discretion in permitting the DEA witness to testify as an expert).

**7.   Reference to Defendant's Possession of Firearms and Reputation for Violence.**

The government has already addressed this issue under point 1, *supra*, and that discussion is incorporated by this reference.  To the extent that the defendant seeks to suggest that Youngberg and Tsoukalas conspired to "frame" Mr. Gianis, their knowledge of his violent reputation is relevant.  It is hardly credible to suggest that the two would seek to falsely accuse someone they sincerely believed would harm them for doing so.

**8.   Reference to Defendant's Alleged Association with Hells Angels.**

The government has information suggesting that Mr. Gianis is actually currently associated with the "Imperial" and/or "UN" gangs, not the Hells Angels.  However, the government does not intend to introduce this evidence at trial, and therefore does not object to this part of the motion.

**9.   References to Defendant's Use of or Trafficking in Steroids.**

This issue was discussed under point 2, *supra*, and that discussion is incorporated here by this reference.  Briefly, Mr. Gianis' and Tsoukalas' prior drug dealing provides the context as to why Gianis approached Tsoukalas about moving the ephedrine over the border.  It is therefore relevant and admissible.  The Court can, and should, give an appropriate limiting instruction.

RESPONSE TO DEFENSE MOTION IN LIMINE - 6
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1       **10.    Reference to Phone Call Regarding Package.**

2       Both Youngberg and Tsoukalas have described a "ruse" involving a United Cargo package, undertaken by someone who was trying to locate both men's address and phone numbers. As outlined in prior briefing and in the two men's depositions, these contacts occurred despite an explicit warning to prior defense counsel (John Henry Browne) that Youngberg, at least, was represented. The government has no reason to doubt that current defense counsel had nothing to do with this conduct.

      Both witnesses perceived the contact as threatening. However, the government does not intend to introduce evidence of either contact in its case in chief, and therefore does not object to the motion.

### IV. CONCLUSION

The government joins the defense in asking the Court to rule on the motions in limine prior to opening statements.

    DATED this 28th day of March, 2008.

Respectfully submitted,

JEFFREY C. SULLIVAN
United States Attorney

  /s Vincent T. Lombardi
VINCENT T. LOMBARDI
WSBA # 21967
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Ste. 5520
Seattle, Washington 98101
Facsimile: 206-553-4440
Phone: 206-553-5178
E-mail: vince.lombardi@usdoj.gov

RESPONSE TO DEFENSE MOTION IN LIMINE - 7
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

 s/ Stephanie J. Orona
STEPHANIE J. ORONA
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4228
Fax: 206-553-0755
E-mail: Stephanie.Orona@usdoj.gov

RESPONSE TO DEFENSE MOTION IN LIMINE - 8
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970