The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,  )
                              )
           Plaintiff,  )
                              )
      v.  )
                              )
KYLE GIANIS,  )
                              )
          Defendant.  )
_____)

NO.   CR04-334RSM

GOVERNMENT'S RESPONSE TO
DEFENSE MOTION FOR NEW
TRIAL

## I. INTRODUCTION

The United States of America respectfully submits this response to Defendant's Motion for New Trial. Defendant contends that the government committed prosecutorial misconduct, by allegedly referring to Defendant's failure to testify in rebuttal argument.

Defendant's motion should be denied for two alternative reasons. First, the government never referred to Defendant's failure to testify, either explicitly or by implication. Even if the government's reference to defendant having a right to counsel could be somehow construed to be an indirect comment on the Defendant's failure to testify, it was a fair and appropriate response to Defendant's own disingenuous attack on the credibility of one of the government's witnesses; namely, the defense's repeated characterization of Tsoukalas' initial refusal to answer certain questions because he wanted to talk to a lawyer as "lying."

Second, even if the government's argument was improper, it was very brief and

RESPONSE TO DEFENSE MOTION FOR NEW TRIAL - 1
(*Gianis*, CR04-334JCC)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  fully cured by the Court's cautionary instruction, delivered immediately after Defendant

2  objected to the argument.

3                                    II. **BACKGROUND**.

4        The basic background is set forth in the government's trial brief and other prior

5  filings, and will not be repeated in the interest of brevity.  To focus on the pertinent facts

6  for this motion, the defense theory at trial was that the two cooperating witnesses

7  (Tsoukalas and Youngberg) had conspired to frame Gianis, to escape or lessen their own

8  exposure to criminal penalties.

9        To make that argument, the defense tried to convince the jury that the two

10  witnesses concocted not one, but two stories to falsely implicate Gianis.  Unfortunately

11  for the Defendant, there was little to no evidence to back up this theory.

12  **A.     TSOUKALAS AND YOUNGBERG'S INTERVIEWS ON MARCH 12, 2004**.

13        After Youngberg and Tsoukalas were arrested, on March 12, 2004, they were

14  separated for questioning.  Both men were interviewed several times the night of their

15  arrest, by both ICE Special Agents and CBP Inspectors.[1]  The sequence of the interviews

16  was as follows: both men were initially interviewed by ICE Special Agents, and then by

17  the CBP Inspectors.  Tsoukalas was then re-interviewed by the ICE Agents.  The

18  interviews by the Agents were documented in ICE Reports of Investigation, submitted to

19  the Court as Defense Exhibits A-1 and A-2.  The CBP interviews (which were primarily

20  for immigration purposes) was documented in Government Exhibits 16 and 17.

21        **1.     Youngberg is Interviewed by ICE Agents**.  Youngberg was interviewed

22  first, at approximately 6:40 p.m.  During the interview, he originally lied and claimed that

23  he had leant his vehicle to Gianis earlier that day.  This was an attempt to claim ignorance

24  of the 50 kilograms of ephedrine in the trunk of the car (Exhibit A-1).  When confronted,

25  Youngberg admitted his involvement consistent with his testimony at trial, including his

26  admission that Gianis was going to pay him and Tsoukalas for bringing the drugs across

27  _____

28      [1] The were also later interviewed during proffers with their counsel present after they were
formally charged.

RESPONSE TO DEFENSE MOTION FOR NEW TRIAL - 2
(*Gianis*, CR04-334JCC)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

the border.

2. **Tsoukalas is Interviewed by ICE Agents**.  Tsoukalas' initial interview began at approximately 6:50 p.m (Exhibit A-2).  Tsoukalas waived his *Miranda* rights and agreed to speak with the agents.  During this interview, Tsoukalas was somewhat vague, and gave contradictory information about how well he knew Gianis, but agreed to cooperate.  Tsoukalas never used the "Kyle borrowed Adam's car" story.

3. **Tsoukalas is Interviewed by CBP**.  Tsoukalas was then interviewed by a CBP Inspector, who typed up the interview in a question and answer format (Government Exhibit 16).  During this interview, Tsoukalas declined to answer a number of questions. The Inspector asked Tsoukalas if he was "not answering the questions because you do not want to tell a lie under oath?"  Tsoukalas answered "Because I want to talk to a lawyer first."[2]

4. **Tsoukalas is Re-Interviewed by ICE**.  After the CBP interview, Tsoukalas was re-interviewed by ICE agents beginning at approximately 10:00 p.m.  (Defense Exhibit A-2).  Tsoukalas did not re-invoke his right to counsel, and continued to answer questions.  His answers that night were consistent with his testimony at trial.

5. **Youngberg is Interviewed by CBP.**  Youngberg was later interviewed by the CBP Inspector.  While the time is not noted in the report (Government Exhibit 17), the date of the report was March 13, 2004, indicating it likely happened after midnight.

**B.    DEFENSE CROSS-EXAMINATION OF TSOUKALAS**.

As set forth above, it was the defense theory that Youngberg and Tsoukalas were lying when they identified Gianis as the source of the ephedrine.  Accordingly, the defense labored mightily to show that the two men had changed their stories the night of their arrest and since.

The problem, of course, was that Tsoukalas at least had not really changed his story.  While Tsoukalas gave additional details when he was interviewed on various

---

[2]  The CBP Inspector did not tell the ICE Agents that Tsoukalas had invoked his right to counsel, and he did not repeat the request to them when re-interviewed later.

1   occasions, and some of the details changed during the interviews, Tsoukalas never flat-

2   out lied about any essential details during his various interviews.

3        Accordingly, defense counsel was forced to characterize Tsoukalas' refusal to

4   answer some questions during his CBP interview (Exhibit 16) as lies.  During his cross-

5   examination of Tsoukalas, defense counsel repeatedly called attention to Tsoukalas' non-

6   responses during that interview, and then characterized them as not being truthful.  The

7   government objected at sidebar that these questions were not posed in good faith and

8   were a gross mis-characterization of the actual interview.  The Court overruled the

9   objection, but permitted the government to bring out that Tsoukalas was not answering

10   the questions because he wanted a lawyer on redirect.

11 **C.     CLOSING ARGUMENT AND REBUTTAL**.

12        During his closing argument, defense counsel returned to the Tsoukalas-as-liar

13   theme.  In support of the argument, defense counsel again returned to the transcript of the

14   CBP interview, emphasizing Tsoukalas' non-responsiveness to support the argument that

15   Tsoukalas was a liar.  Again, defense counsel again deliberately neglected to mention *why*

16   Tsoukalas refused to answer those questions at that juncture, painting a false picture.

17        In rebuttal, the government again pointed out that Tsoukalas was not lying when

18   he failed to answer certain questions during the CBP interview.  Instead, he was refusing

19   to answer questions at that particular point in time because he wanted a lawyer.  The

20   government also pointed out the obvious - that everyone, including Gianis, has a right to

21   counsel guaranteed by the constitution, and that it was unfair for the defense to criticize a

22   witness for availing himself of that right.

23        Put another way, in the course of rebutting the defense argument, the government

24   made a passing reference to the fact that Gianis had a lawyer **at trial**.  At no point in time

25   did the government explicitly or implicitly refer to Gianis having a right to testify or

26   remain silent, comment on Gianis' failure to testify, or refer to when/how Gianis had

27   asked for a lawyer.

28

1    The defense nonetheless objected to the government's reference to Gianis' right to

2    counsel.  The Court immediately sustained the objection, and instructed the jury to

3    disregard the argument.

4        It should also be pointed out that the jury never heard any evidence one way or

5    another about the circumstances of Gianis' arrest, Gianis' post-arrest silence/statement,

6    and how/when he obtained counsel, due to the Court's suppression of Gianis' statement to

7    ICE agents in New York.

8                          **III. <u>LEGAL ANALYSIS</u>**.

9        Defendant's motion for a new trial fails for two reasons.  First, the government

10   never commented on the defendant's failure to testify in any way.  The government's

11   passing reference in rebuttal to the right to counsel can not be fairly characterized as an

12   attack on Gianis' failure to testify.  It was therefore not prosecutorial misconduct or

13   otherwise reversible error.  Even if the government's argument was somehow improper, it

14   was invited by the defendant's unfair characterization of Tsoukalas' failure to answer

15   certain questions during his CBP interview.  Second, the Court's cautionary instruction to

16   the jury, together with the other instructions given during trial, eliminated any prejudice

17   to the defendant.

18   **A.    THE GOVERNMENT DID NOT INTEND TO COMMENT ON**

19   **       DEFENDANT'S FAILURE TO TESTIFY, AND DID NOT DIRECTLY**

20   **       COMMENT ON THAT FAILURE.**

21       It is well established that a prosecutor may not comment on a defendant's failure to

22   testify or make a statement incident to his or her arrest.  *Griffin v. California*, 38 U.S. 609,

23   615 (1965).  However, the law distinguishes between direct comments on a defendant's

24   failure to testify, and indirect comments on that failure.  An indirect comment only

25   violates *Griffin* if "it is manifestly intended to call attention to the defendant's failure to

26   testify, or is fo such a character that the jury would naturally and necessarily take it to be a

27   comment on the failure to testify."  *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006).

28       Here, the government's rebuttal argument was intended to respond to the defense's

RESPONSE TO DEFENSE MOTION FOR NEW TRIAL - 5
(*Gianis*, CR04-334JCC)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   unfair argument that Tsoukalas' invocation of his right to counsel was somehow

2   tantamount to lying agents.  The government was entitled, in rebuttal, to point out that

3   Tsoukalas had a constitutional right, like any other person, to ask for a lawyer before

4   answering questions, and that there was nothing improper about his doing so.  This

5   argument was, at most, an indirect comment on defendant's failure to testify and

6   representation by counsel.  It was not intended to call attention to the defendant's failure

7   to testify (or retain counsel); instead, it was a response to the defendant's argument

8   attacking the credibility of a government witness.

9        This case is analogous to the facts of *Unites States v. Soulard*, 730 F.2d 1292 (9th

10  Cir. 1984).  In *Soulard*, the prosecutor did not directly refer to the defendant's failure to

11  take the stand.  Instead, the prosecutor, in rebutting arguments made by the defense,

12  pointed out a general failure by the defendant to present **any** evidence - which of course,

13  indirectly includes a defendant's own testimony.  The Ninth Circuit concluded that this

14  indirect reference was insufficient to mandate reversal.  The Court went on to observe

15  that "even if the prosecutor had directly referred to [defendant's] failure to testify, our

16  Court has been reluctant to reverse where, as here, the prosecutorial comment was a

17  single isolated statement, did not stress an inference of guilt from silence as a basis of

18  conviction, and was followed by a curative instruction."  *Id.* 730 F.2d at 1307.  *See also*,

19  *United States v. Bagley*, 772 F.2d 482, 494-95 (9th Cir. 1985).

20       The cases cited by the defense are all distinguishable.  Virtually every case relied

21  upon by the defense involved much more explicit references to a defendant's failure to

22  testify, and/or repeated references to that right.  For example, in *United States v. Kallin*,

23  50 F.3d 689 (9th Cir 1995), a tax case, the prosecutor repeatedly and explicitly

24  commented on the defendant's pretrial silence, and on his retention of counsel during the

25  investigation of the crime - not during the trial proper.  During cross-examination of the

26  defendant, the prosecutor repeatedly asked the defendant why he failed to tell the story he

27  offered on direct during the investigation, and disparaged the fact that the defendant had

28  hired a lawyer to represent him during the investigative stage of the case.

RESPONSE TO DEFENSE MOTION FOR NEW TRIAL - 6
(*Gianis*, CR04-334JCC)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    The facts in *Kallin* bear no resemblance to the facts before the Court on this

2    motion.  The jury never heard any evidence regarding defendant's arrest or his statement

3    (or lack thereof) incident to arrest.  The jury never heard any evidence regarding when or

4    how the defendant obtained counsel.  The government never referred to defendant's

5    failure to testify.  At most, the government made a passing reference to the fact that the

6    defendant had a lawyer sitting with him at trial, to illustrate the point that **all**

7    suspects/defendants in a criminal matter had a right to counsel - even Mr. Tsoukalas.

8    This latter reference was invited by the defense argument effectively criticizing Mr.

9    Tsoukalas for invoking that right.  This reference does not rise to the level of misconduct,

10   much less misconduct requiring a new trial.

11   **B.     EVEN IF THE GOVERNMENT'S REBUTTAL ARGUMENT WAS**

12   **         IMPROPER, IT WAS ISOLATED AND CURED BY THE COURT'S**

13   **         INSTRUCTION TO DISREGARD.**

14   As set forth above, the government's argument was not an explicit comment on

15   defendant's failure to testify, and was not intended to call attention to that failure.  Rather,

16   it was a positive comment on how every witness and defendant has a right to counsel, and

17   that it was unfair for the defense to characterize Tsoukalas' invocation of that right as

18   lying.  The jury could not take that comment as disparaging the defendant's right to

19   remain silent or be represented by counsel at trial.

20   However, even if the comment was improper, it was a single comment, isolated in

21   nature, and fully addressed by the Court's instruction to disregard and other instructions.

22   In *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974), the Court held that an ambiguous

23   isolated comment followed by a prompt disapproving instruction could not render a trial

24   fundamentally unfair.  *See also*, *Soulard*, 730 F.2d at 1307.

25   Juries are presumed to follow an instruction to disregard improper evidence or

26   arguments, unless there is an overwhelming possibility that the jury is unlikely to do so,

27   and the improper evidence/argument is devastating to the defendant.  *Greer v. Miller*, 483

28   U.S. 756, 766-67, n. 8 (1987) (a single improper question, followed by an immediate

RESPONSE TO DEFENSE MOTION FOR NEW TRIAL - 7
(*Gianis*, CR04-334JCC)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  objection and curative instruction, did not violate defendant's due process rights).

2       Here, the Court sustained the defense objection, and gave a prompt instruction to

3  disregard.  When coupled with the Court's instruction that the defendant had a right to

4  remain silent (End of Case Instruction No. 3), and what is and is not evidence (End of

5  Case Instruction No. 6), there is no reason to believe the jury was improperly influenced

6  by the government's brief reference to the right to counsel.  Accordingly, the motion for a

7  new trial can and should be denied on this basis alone.

8                              IV.  **CONCLUSION**

9       The government did not intend to negatively comment on Mr. Gianis' right to

10 remain silent and to have counsel, and its comment in rebuttal cannot be construed as

11 such.  Even if it could be so construed, the Court's instructions to the jury fully cured any

12 prejudice to the defendant.  The motion should therefore be denied.

13       DATED this 23rd day of June, 2008.

14                                             Respectfully submitted,

15                                             JEFFREY C. SULLIVAN
                                               United States Attorney
16
                                               /s   Vincent T. Lombardi
17                                             VINCENT T. LOMBARDI
                                               WSBA # 21967
18                                             Assistant United States Attorney
                                               United States Attorney's Office
19                                             700 Stewart Street, Ste. 5520
                                               Seattle, Washington 98101
20                                             Facsimile: 206-553-4440
                                               Phone: 206-553-5178
21                                             E-mail: vince.lombardi@usdoj.gov

22

23

24

25

26

27

28

RESPONSE TO DEFENSE MOTION FOR NEW TRIAL - 8
(*Gianis*, CR04-334JCC)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing  to the attorney of record for the defendant.

<div style="margin-left: 40%;">
s/  Adam Keeling
ADAM KEELING
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206/553-7970
FAX:   206/553-0755
E-mail: adam.keeling@usdoj.gov
</div>