The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA, )
                      Plaintiff, )
                       )
              v. )
                       )
KYLE GIANIS, )
                       )
              Defendant. )
_____)

NO.   CR04-334RSM

UNITED STATES' SENTENCING
MEMORANDUM

## I. **INTRODUCTION**

     The United States of America joins the Probation Office in respectfully recommending that Defendant Kyle Gianis be sentenced to 180 months in prison, to be followed by three years of supervised release.

     Defendant was convicted, after a brief trial, of the sole count in the Indictment, Conspiracy to Possess Ephedrine with the Intent to Distribute, in violation of 21 U.S.C. 841 and 846. Defendant directed two other men to bring fifty kilograms of ephedrine, a precursor chemical used in making methamphetamine, into the United States from Canada. This was a very serious offense; this Court needs no explanation of the extraordinary havoc that methamphetamine manufacture, sale and use has done to communities here and elsewhere in the United States. This offense was merely the latest in a long string of troubling incidents involving this Defendant. A lengthy sentence is therefore called for under both the Guidelines and under 18 U.S.C. § 3553(a).

U.S. SENTENCING MEMO - 1
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1          **II. FACTUAL BACKGROUND**

2          The Court presided over the trial in this matter, and doubtless recalls the facts,

3     which are not complex.  This case arises out of a prior related prosecution.  On

4     March 12, 2004, Adam Tsoukalas and David Youngberg attempted to cross the border

5     from Canada at the Pacific Highway Port of Entry in Blaine, Washington, in a vehicle

6     registered to Youngberg, but driven by Tsoukalas.  During primary inspection by

7     United States border personnel, a blue barrel was found concealed under a black plastic

8     bag in the trunk.  The inspector asked Tsoukalas what was in the barrel, and Tsoukalas

9     answered "just some stuff."

10         The two men and their vehicle were referred to secondary inspection.  During the

11    more thorough search of the car, a second blue barrel was also found in the trunk.  Both

12    barrels were found to contain a white crystalline powder.  An analysis by the

13    United States Drug Enforcement Administration laboratory showed that the barrels

14    contained fifty kilograms of ephedrine.  As the Court knows, ephedrine is one of the

15    precursor chemicals used to manufacture methamphetamine, and is a controlled substance

16    in the United States.

17         Both men were placed under arrest and were separated and questioned.  Both men

18    independently identified the source of the ephedrine as Gianis.  According to both men,

19    Tsoukalas was originally approached by Gianis in Canada, who asked if Tsoukalas was

20    interested in moving marijuana over the border into the United States.  Gianis and

21    Tsoukalas had been in High School together in Canada, and worked out at the same gym.

22    Tsoukalas had purchased steroids from Gianis in the past, and the two had also done a

23    prior marijuana deal together.

24         On the day of their arrest, Gianis called Tsoukalas and asked if he would be

25    willing to move a quantity of ephedrine over the border.  Tsoukalas said yes, and both

26    Tsoukalas and Youngberg ended up meeting with Gianis to pick up the barrels in the

27    Surrey area.  Gianis loaded the barrels into the trunk of Youngberg's vehicle, and the two

28    drove down to the U.S./Canadian border, where they were arrested.

U.S. SENTENCING MEMO - 2
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    Both Tsoukalas and Youngberg were charged in this Court, and ultimately agreed

2   to cooperate and plead guilty to federal offenses.  Youngberg pleaded guilty to a

3   misprison of a felony, in violation of Title 18, United States Code, Section 4.  He was

4   sentenced to twenty-one months incarceration on or about September 24, 2004, and has

5   since been released and returned to Canada.  Tsoukalas was ultimately sentenced to sixty

6   months incarceration.  He was transferred to Canada on or about September 25, 2007

7   pursuant to the Convention on the Transfer of Sentenced Persons.

8    During the original prosecution, Gianis repeatedly called Tsoukalas' lawyer, David

9   Roberson, asking him for reports and other paperwork pertaining to the seizure of the

10   fifty kilograms of ephedrine.

11   **A.    Indictment and Later Arrest of Gianis**.

12    Based on the information provided by defendants Tsoukalas and Youngberg, the

13   United States sought and successfully obtained the indictment of Gianis presently before

14   the Court.  Gianis was arrested in New York, NY in late December of last year, after he

15   was ejected from Mexico by the Mexican government.  During routine processing, and

16   prior to giving Gianis his *Miranda* warning, the arresting ICE agent asked Gianis if he

17   knew about the arrest warrant.  Gianis answered no, he was not, but then volunteered that

18   he knew what the warrant was about, stating that a friend of his was arrested some time

19   ago and probably "gave him up."  The Court suppressed the statement, concluding that

20   while it was not coerced, it was nonetheless improperly obtained.

21                    **III. GUIDELINE CALCULATION**.

22    The government concurs with Probation's calculation of the advisory Guideline

23   range in its entirety.  Defendant directed his co-conspirators to move fifty kilograms of

24   ephedrine across the U.S./Canadian border, which results in a base offense level of 38,

25   pursuant to U.S.S.G. § 2D1.11(d)(1).

26    As an aside, this offense level is triggered when a defendant possesses "just" three

27   kilograms of ephedrine.  Gianis directed others to move 50 kilograms of this substance,

28   more than sixteen times the amount necessary to trigger this maximum offense level.

U.S. SENTENCING MEMO - 3
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    In addition, because Defendant directed the activities of Tsoukalas (and, indirectly,

2  of Youngberg), the Court should also assess the two-level increase of a leadership role

3  pursuant to U.S.S.G. § 3B1.1(c).

4    Defendant is obviously not eligible for acceptance of responsibility.  He chose to

5  go to trial, and indeed appears to maintain his innocence to this day.

6    Defendant is Criminal History Category I, although as outlined below that may

7  understate his true criminal history.  This results in a Guideline range of 292 - 365

8  months.  However, the statutory maximum is 240 months.

9              **IV. RECOMMENDATION AND JUSTIFICATION**.

10   The government joins the Probation Office in recommending 180 months.  Fifteen

11  years is well below the advisory Guideline range.  However, it is a lengthy sentence by

12  any definition, and is justified under the factors set forth in 18 U.S.C. § 3553(a).

13   Section 3553(a) requires the Court to consider the nature and circumstances of the

14  offense and the defendant's characteristics, and then "impose a sentence sufficient, but

15  not greater than necessary, to comply with the purposes set forth in paragraph (2)."

16  Section 3553(a)(2) states that such purposes include the need for the sentence:

17           (A) to reflect the seriousness of the offense, to promote respect for the law,
              and to provide just punishment for the offense;
18
             (B) to afford adequate deterrence to criminal conduct;
19
             (C) to protect the public from further crimes of the defendant; and
20
             (D) to provide the defendant with needed educational or vocational training,
21            medical care, or other correctional treatment in the most effective manner.

22   Section 3553(a) further directs the Court to consider other factors, including: the

23  nature and circumstances of the offense and the history and characteristics of the

24  defendant; the kinds of sentences available; and the need to avoid unwarranted sentence

25  disparities among defendants with similar records who have been found guilty of similar

26  conduct.  Here, these factors point to a lengthy sentence, albeit one below the Guideline

27  range.

28

U.S. SENTENCING MEMO - 4
(*Gianis*, CR04-334RSM)

**A.      The Nature and Circumstances of the Offense and Defendant's**

**        Characteristics**.

This factor calls for a long sentence.  As to the nature of the offense, methamphetamine trafficking and abuse is a tremendous problem in our community. Indeed, *voire dire* in this case featured several unprompted testimonials from members of the public about the havoc methamphetamine wreaks on peoples lives.  Without the help of the Defendant and other suppliers of precursor chemicals, methamphetamine simply cannot be manufactured.  Defendant is just as culpable as the person who ultimately uses the ephedrine to make methamphetamine.

Defendant's personal characteristics, as summarized in the PSR, also call for a lengthy sentence.  Defendant's criminal history score under-represents the danger he poses to society.  Defendant has two prior Canadian convictions (a juvenile drug conviction and an adult weapons conviction).  However, despite his relative youth, Canadian records show a lengthy list of contacts with law enforcement, including multiple assaults.  PSR ¶¶ 38 - 50.  Defendant's criminal activities have been the subject of media reports in Canada - a copy of a newspaper article describing a shooting at his home, and the fearful reactions of his neighbors, is filed herewith as Exhibit 1.  Finally, Defendant of course has failed to take responsibility for his actions, and is completely unrepentant.

**B.      The Need for the Sentence to Reflect the Seriousness of the Offense, and to**

**        Afford Adequate Deterrence.**

This factor overlaps with the prior factor, and should largely drive the sentence imposed in this case.  Ephedrine is the primary feedstock chemical used to make methamphetamine, and without a steady supply, meth cooks simply cannot make their product.  A lengthy sentence is necessary to reflect the seriousness of the offense. According to the Sentencing Commission's commentary on the amendments to the 2001 manual, the Commission enhanced the punishments for possession of listed chemicals at Congress' direction, contained in the "Methamphetamine Anti-Proliferation Act of 2000,

U.S. SENTENCING MEMO - 5
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   Pub. L. 106–310." Congress directed the Commission to establish penalties for these

2   precursor chemicals that "correspond to the quantity of controlled substance that

3   reasonably could have been manufactured using the quantity of . . . pseudoephedrine

4   possessed or distributed." The current verison of Section 2D1.11 was therefore explicitly

5   designed to tie "the base offense level for [ephedrine and pseudoephedrine] to the base

6   offense levels for methamphetamine (actual) set forth in § 2D1.1 . . . assuming a 50

7   percent actual yield of the controlled substance from the chemicals." *See*, *United States*

8   *Sentencing Commission Guidelines, Supplement to Appendix C, November 1 1998*

9   *through November 1, 2001* at page 112.

10          Accordingly, the Sentencing Commission dramatically increased the maximum

11   offense level, to **38** from 30, and decreased the quantity necessary to reach that maximum

12   offense level to just **3** kilograms, down from 20 kilograms. Again, Defendant caused

13   others to attempt to smuggle 50 kilograms of ephedrine into the U.S., a staggering amount

14   under any version of the Guidelines.

15          In short, the Sentencing Commission responded to an explicit directive from

16   Congress to increase the Guideline range for this offense. Thus, the sentencing guidelines

17   properly reflect the seriousness of the offense and have equated the crime to be similar in

18   dangerousness and character as the distribution, possession, and manufacture of

19   methamphetamine.

20   **C.      A Long Sentence, Albeit One Below the Guideline Range, is Necessary to**

21   **         Avoid Unwarranted Disparities with Other Defendants.**

22          Probation notes that Defendant's co-conspirators received dramatically lower

23   sentences. Those sentences were justified by the facts and circumstances of those

24   individual defendant's situations. Neither defendant had any criminal history whatsoever.

25   Both were, essentially, hapless couriers. Neither played a leadership role in any

26   meaningful sense. Youngberg suffered from documented mental health issues that

27   further reduced his culpability.

28          Last, but not least, both Youngberg and Tsoukalas began cooperating almost

U.S. SENTENCING MEMO - 6
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   immediately after their arrest.  Both men told the government everything they knew about

2   the offense, and both ended up returning from Canada (albeit reluctantly) to testify

3   against this Defendant.  Given Gianis' history, both Youngberg and Tsoukalas were

4   afraid to do so, but nonetheless followed through.  All of these facts justify the

5   comparatively low sentences they ultimately received.

6        By contrast, this Defendant was a true leader in the conspiracy.  He also has a more

7   disturbing criminal history as outlined above.  He has never admitted to his own

8   involvement, much less provided information about others involved in the conspiracy.

9        All that said, the Court can and should consider sentences meted out to other

10  defendants involved in similar criminal conduct.  One example, familiar to this writer, is

11  *U.S. v. Karawi*, CR04-389RSL.  The defendant in that case was a shopkeeper who was

12  caught selling precursor chemicals (pseudoephedrine) out of his shop in Seattle.  Like this

13  Defendant, Karawi chose to go to trial and was convicted.  Like this Defendant, Karawi

14  had a troubling history of violence, but little in the way of actual countable criminal

15  history (Karawi had a prior conviction for assault with a deadly weapon which was

16  overturned on appeal).  Unlike this Defendant, Karawi was convicted of selling a far

17  smaller amount of pseudoephedrine, just under 715 grams of that substance (which

18  corresponded to a base offense level 34), and did not have a leadership role.  Judge

19  Lasnik ultimately sentenced the defendant in Karawi to 144 months, or 12 years, which

20  was upheld on appeal.

21       By contrast, Gianis caused others to smuggle a vastly larger quantity of ephedrine

22  in this case, which calls for a longer sentence.  Accordingly, the government respectfully

23  submits that a sentence of 180 months is appropriate and no greater than necessary to

24  fulfill the goals of sentencing.

25       This is particularly true because as a Canadian citizen, Mr. Gianis may be eligible

26  for a treaty transfer back to his home country.  Unlike the United States, Canada still has

27  parole for drug offenders, even for individuals sentenced in the United States.

28  Accordingly, it is possible that Mr. Gianis will end up actually serving only a fraction of

U.S. SENTENCING MEMO - 7
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   this total sentence in custody, assuming that his transfer request is granted and the

2   Canadian government grants him an early release.

3                                   **V. CONCLUSION.**

4           Defendant engineered a conspiracy to move a staggeringly large amount of

5   ephedrine over the border into the United States.  A sentence of 180 months is sufficient,

6   but no more than necessary, to satisfy the goals of sentencing in this matter.

7           DATED this 2nd day of September, 2008.

8                                           Respectfully submitted,

9                                           JEFFREY C. SULLIVAN
                                            United States Attorney
10
                                            /s Vincent T. Lombardi
11                                          VINCENT T. LOMBARDI
                                            WSBA # 21967
12                                          Assistant United States Attorney
                                            United States Attorney's Office
13                                          700 Stewart Street, Ste. 5520
                                            Seattle, Washington 98101
14                                          Facsimile: 206-553-4440
                                            Phone: 206-553-5178
15                                          E-mail: vince.lombardi@usdoj.gov

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. SENTENCING MEMO - 8
(*Gianis*, CR04-334RSM)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

CERTIFICATE OF SERVICE

2          I hereby certify that on September 2, 2008, I electronically filed the foregoing with

3    the Clerk of Court using the CM/ECF system which will send notification of such filing

4    to the attorney(s) of record for the defendant(s).  I hereby certify that I have served the

5    attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

6

7                                              s/Adam Keeling
                                             ADAM KEELING
                                             Legal Assistant
8                                            United States Attorney's Office
                                             700 Stewart Street, Suite 5220
9                                            Seattle, Washington 98101-1271
                                             Phone: 206/553-7970
10                                           FAX:   206/553-0755
                                             E-mail: adam.keeling@usdoj.gov
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28